IN THE
UNITED STATES COURT OF APPEALS
FOR THE
ELEVENTH CIRCUIT
ATLANTA, GEORGIA

_____

APPEAL NO: 23-12062

_____

UNITED STATES OF AMERICA
Plaintiff/Appellee

Versus

DEMPSEY EMMANUEL GILMORE
Defendant/Appellant

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

8:22-CR-258-WFJ-JSS

_____

INITIAL BRIEF

_____

MARK J. O'BRIEN, ESQUIRE
O'Brien Hatfield, P.A.
Bayshore Center
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989
Florida Bar No. 160210
COUNSEL FOR APPELLANT

APPEAL NO: 23-12062

*United States of America v. Dempsey Emmanuel Gilmore*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1, I hereby certify that the persons listed below are interested in the outcome of this case:

1.  Beckman, Samantha Elizabeth, Assistant United States Attorney;

2.  Jung, William F.,  United States District Court Judge;

3.  Nebesky, Suzanne C.,  Assistant United States Attorney;

4.  Sneed, Julie S.,  United States Magistrate Judge;

5.  Wilson, Thomas  G.,  United States Magistrate Judge;

6.  Gilmore, Dempsey, Defendant/Appellant;

7.  O'Brien, Mark J., Esq.; and

8.  Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellant, DEMPSEY EMMANUEL GILMORE, does not request oral argument. It is respectfully submitted that the arguments and facts are clear on the face of the record on appeal; this Honorable Court will not need assistance in resolving this action.

## <u>CERTIFICATE OF STYLE AND FONT</u>

This brief is written in 14 point Times New Roman. To the best of Counsel's information and belief, it is 10 pitch.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…………......………...…….…I

STATEMENT REGARDING ORAL ARGUMENT…………......…………..…II

CERTIFICATE OF STYLE AND FONT…………......……………..…….…..II

TABLE OF CONTENTS…………......……………………………….….…...III

TABLE OF AUTHORITIES…………......………………………….….…...V

STATEMENT OF JURISDICTION…………......……………….…….……...1

STATEMENT OF THE ISSUES…………......………………………….…...1

STATEMENT OF THE CASE…………....……………………………….…...1

    **(i)**    **Course of Proceedings and Disposition in the Court Below**…...…1

    **(ii)**    **Statement of the Facts as Revealed at the Suppression Hearing**....4

    **(iii)**    **Statement of the Facts As Revealed At Trial**………….……...6

    **(iv)**    **Statement of Sentencing Facts**…………………………………13

    **(v)**    **Standard of Review**……………………………………………14

SUMMARY OF THE ARGUMENT………………………………….……15

ARGUMENT AND CITATIONS OF AUTHORITY……………………………16

    **I.**    **THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS………………**……………….……………16

    **II.**    **THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION**………………….19

**I.    THE DISTRICT COURT ERRONEOUSLY DENIED THE APPELLANT'S OBJECTION TO THE SENTENCING ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**…………..24

CONCLUSION………………………………………………………...…27

CERTIFICATE OF COMPLIANCE…………………………...…………...28

CERTIFICATE OF SERVICE…………………………………...……………..28

# <u>TABLE OF AUTHORITIES</u>

## <u>C</u>ASES

*Groh v. Ramirez*, 540 U.S. 551 (2004).................................................16

*Horton v. California*, 496 U.S. 128 (1990) ...........................................18

*Massachusetts v. Sheppard,* 468 U.S. 981 (1984)..................................16

*United States v. Arbane*, 446 F.3d 1223 (11th Cir. 2006).......................20

*United States v. Bautista-Silva*, 567 F.3d 1266 (11th Cir. 2009)...........14

*United States v. Brantley*, 68 F.3d 1283 (11th Cir. 1995)......................20

*United States v. Browne*, 505 F.3d 1229 (11th Cir. 2007) .....................14

*United States v. Ellwood*, 188 Fed. Appx. 935 (11th Cir. 2006).............19

*United States v. Facey*, 386 Fed. Appx. 910 (11th Cir. 2010) ...............14

*United States v. Garcia*, 405 F.3d 1260 (11th Cir. 2005) ......................20

*United States v. Gunn*, 369 F.3d 1229 (11th Cir. 2004)..........................22

*United States v. Herrera*, 931 F.2d 761 (11th Cir. 1991) ......................15

*United States v. Leon*, 468 U.S. 897 (11th Circuit 1984).......................18

*United States v. Massey*, 443 F.3d 814 (11th Cir. 2006)........................15

*United States v. Simpson*, 228 F.3d 1294 (11th Cir. 2000) ....................20

*United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998).........................19

## <u>S</u>TATUTES

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 922(g)(1) ..........................................................................3

21 U.S.C. § 841(a)(1) ..........................................................................2

21 U.S.C. § 846 ..............................................................................2, 19

28 U.S.C. § 1291 ..................................................................................1

## OTHER AUTHORITIES

U.S.S.G. §3C1.1 ................................................................................26

## RULES

F.R.C.P. 29(a) ..............................................................................15, 19

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ........................................................................16

## STATEMENT OF JURISDICTION

Title 28 U.S.C. § 1291 provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district court of the United States except where a direct review may be had in the Supreme Court.

The United States District Court, Middle District of Florida, Tampa Division, had jurisdiction pursuant to Title 18 U.S.C. § 3231. This is an appeal from the sentencing and Final Judgment entered by the District Court on June 1, 2023. (Doc. 87). Appellant filed his Notice of Appeal on June 14, 2023. (Doc. 92).

## STATEMENT OF THE ISSUES

Whether the district court erred in denying the Appellant's motion to suppress the fruits of an illegal seizure.

Whether the district court erred in denying the Appellant's motion for judgment of acquittal when the evidence was insufficient to prove the charged offense.

Whether the district court erroneously overruled the Appellant's objection to a sentencing enhancement.

## STATEMENT OF THE CASE

### i.  Course of Proceedings and Disposition in the Court Below

On January 11, 2023, a federal grand jury issued a superseding four-count indictment against the Appellant, Dempsey Emmanuel Gilmore. (Doc. 35). The

indictment charged the Appellant in Count One with knowingly and willfully conspiring with other persons to possess with intent to distribute and to distribute 50 grams or more of methamphetamine (a Schedule II controlled substance) and less than 50 kilograms of marijuana (a controlled substance) in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A), and 841(b)(1)(D). (Doc. 35 at 1). As to Count Two, the Appellant was charged with knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine (a Schedule II controlled substance) and less than 50 kilograms of marijuana (a controlled substance) in violation of Title 21, United States Code, Sections 841(b)(1)(A), and 841(b)(1)(D). (Doc. 35 at 1-2). The Appellant was charged in Count Three with knowingly possessing a firearm in furtherance of a violation of Title 21, United States Code, Section 841(a)(1) as alleged in counts One and Two of the indictment, in violation of Title 18, United States Code Section 924(c). (Doc. 35 at 2). Finally, in Count Four, the Appellant was charged with knowingly possessing a firearm and ammunition, in and affecting interstate commerce, while knowing that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year (to wit: HS Produkt Springfield Armory, model XDM Compact, .45 caliber pistol; Sellier & Bellot, .45 caliber ammunition; Geco, .45 caliber ammunition; Aguila, .45 caliber ammunition; and A-

Merc caliber ammunition), all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). (Doc. 35 at 2-3).

On January 10, 2023, counsel for the Appellant filed a Motion to Suppress. (Doc. 29). Following a suppression hearing before the Honorable Judge William F. Jung, the Motion to Suppress was denied on February 8, 2023. (Doc. 51).

This matter went to trial on March 8, 2023. The jury was adjourned on March 9, 2023 to deliberate. The jury ultimately returned a verdict of guilty on March 9, 2023, finding the Appellant guilty as charged to Counts One, Two, Three, and Four. (Doc. 74).

The Appellant's sentencing hearing took place on May 31, 2023. Ultimately, the Appellant was sentenced to a  global incarcerative sentence of three hundred sixty months: a term of three hundred (300) months in the Bureau of Prisons (BOP) as to Counts One and Two to run concurrent; sixty (60) months as to Count Three, to run consecutive to all counts; and one hundred twenty one (121) months as to Count Four, to run concurrent to Counts One and Two. (Doc. 86 at 2). The Appellant was also sentenced to five (5) years of supervised relief for Counts One, Two, and Three, and three (3) years of supervised release for Count Four, with all terms to run concurrent. (Doc. 87 at 3). The Appellant then timely filed his Notice of Appeal on June 14, 2023. (Doc. 92). The Appellant remains incarcerated today.

### ii.  Statement of the Facts as Revealed During the Suppression Hearing

A hearing on the Motion to Suppress Evidence was conducted before the Honorable Judge William F. Jung on February 8, 2023. (Doc. 102). The Motion to Suppress sought to prohibit introduction of the contents of two digital video recorders and two memory cards seized in the execution of a search warrant for a residence located at 3723 North 54th Street. (Doc. 29 at 1). The district court opened the hearing by finding that Appellant was an invitee of the residence and that the Appellant had standing for the Motion to Suppress. (Doc. 102 at 3-4). Detective Taylor Hart was then called as the first witness for the government. (Doc. 102 at 6).

Detective Hart was employed by the Tampa Police Department and became a detective in September of 2020. (Doc. 102 at 6). Hart was on duty on February 9, 2021, and applied for a search warrant of 3723 North 54th Street in Tampa, Florida via an eWarrant portal. (Doc. 102 at 9). After the warrant was reviewed, a warrant was issued for the search of the residence.  (Doc. 102 at 10). Hart was on scene and participating in the search of the residence. Hart identified the search warrant return and evidence log submitted after the search. (Doc. 102 at 12).

Hart testified that the bulk of the "legality terms" of the search warrant was a template created for eWarrants. Further, the text of Exhibit A was a form document that Hart obtained years prior to 2021. The only personalized portion of Exhibit A was the type of drugs that may be seized in the search. (Doc. 102 at 13-14).  While

Hart testified that Exhibit A was sworn just as the warrant was sworn, there was no signature on Exhibit A. Further, the warrant was submitted and approved electronically, so Hart never went before a judge to obtain authorization. (Doc. 102 at 16-17). Hart printed the search warrant to show to the homeowner after the warrant was issues, but did not print the affidavit for Exhibit A. Only Hart was aware whether the items seized were included in Exhibit A at the time of the search. (Doc. 102 at 17-18). Detective Hart had difficulty retrieving Exhibit A from eWarrants, but testified that the Exhibit was recovered and produced to the government, in addition to a screenshot evidencing the date the exhibit was modified. (Doc. 102 at 20-21).

Two free-standing cameras were seized, both containing SD card slots. Hart recalled that one camera was located in the kitchen, and the other may have been in a bedroom on the south side of the home. Hart recalled that the camera in the kitchen visible and could recall whether the second camera was in plain view. (Doc. 102 at 18-19).

Officer William Rose testified that was employed by the Tampa Police Department and was assigned to the crime scene squad on February 9, 2021. Rose participated in the execution of the search warrant on 3723 North 54th Street. (Doc. 102 at 22-23).

Williams testified that saw a camera in the kitchen positioned up the cabinets facing the rear entry door on the southeast corner of the residence. An additional

monitor was in the bedroom with a display of additional camera angles in the residence. Both cameras seized had SD cards inserted. (Doc. 102 at 25). The cameras were plugged in and operable. Williams also believed that there were additional video recorders in the house. (Doc. 102 at 24). Williams testified that he believed the recording devices would have captured the identity of individuals who entered the home. (Doc. 102 at 26). Rose acknowledged that the cameras were not contraband, and they were seized without law enforcement reviewing the footage to see what the footage showed. (Doc. at 27).

At the close of the hearing, the district court made an oral ruling denying the Motion to Suppress and finding that Exhibit A was presented to the issuing judge as a part of the warrant, and regardless of whether Exhibit A was presented to the owner of the residence, the cameras were in plain view of the officers. (Doc. 102 at 31-32).

### iii. Statement of the Facts as Revealed at Trial

This matter went to trial on March 8, 2023. The jury was adjourned on March 9, 2023 to deliberate. (Doc 103, 104). The jury ultimately returned a verdict of guilty on March 9, 2023, finding the Appellant guilty as to Counts One, Two, Three, and Four. (Doc. 104 at 139-40).

Officer Spencer Adkinson, of the Tampa Police Department (TPD), was the first witness called to testify for the government. (Doc. 103 at 116). Adkinson was working the midnight shift on February 9, 2022, in a fully marked TPD SUV with

overhead lights. Adkinson came across a Dodge Charger traveling at a high rate of speed on South 26th Street. The vehicle tag was "242LN." Adkinson testified that he followed the Charger and witnessed as the driver ran a stop sign. Adkinson attempted to initiate at traffic stop. (Doc. 103 at 117-18).

The Charger continued moving away from Adkinson's vehicle at a high speed, and Adkinson disengaged the vehicle pursuit and notified the other road units and air services units in the area. (Doc. 103 at 118-19). Adkinson learned that the Charger stopped briefly on the road, and items may have been discarded from the Charger. (Doc. 103 at 122-23). The Charger than moved to a residence and two subjects exited and fled over a fence to a home located at 3723 54th Street North. (Doc. 103 at 123-24).

Law enforcement formed a perimeter around the home. (Doc. 103 at 125). Ultimately, two men identified as Appellant and Elvis Martin[1] exited the home in response to law enforcement commands. (Doc. 103 at 127). A search warrant was effectuated on the home. Adkinson testified that he noted several cameras and video recording storage in the home and seized these items. (Doc. 103 at 130-31).

Officer Joseph Blanco, of the TPD aviation unit, testified that he was on duty on February 9, 2022, and assisted in the vehicle pursuit of the Charger from a helicopter. (Doc. 103 at 139-44). Blanco monitored the Charger and observed the

---

[1] Adkinson identified a man in the gallery of trial as Elvis Martin.

vehicle stop briefing on the side of the road and witnessed that an item was thrown from the vehicle via a thermal camera. (Doc. 103 at 145-47). The object appeared to come from the passenger side of the Charger. (Doc. 103 at 160). The Charger then left the area and came to rest in a residential area. Blanco testified that two individuals exited the Charger and jumped a fence to enter a home through the backyard. (Doc. 103 at 147-48).

Officer William Rose, of the TPD, testified that he was assigned to the street crimes plainclothes unit on February 9, 2022 with his partner, Officer Jorge Tamargo. (Doc. 103 at 161-62). Rose witnessed a red Dodge Charger driving at a high rate of speed and simultaneously received Officer Adkinson over the radio attempting to stop a Charger. (Doc. 103 at 163). Rose and Tamargo reported to a location that the air unit noted an item was thrown from the vehicle. (Doc. 103 at 164). Rose discovered a cardboard box in a ditch with multiple bags containing suspected marijuana and additional bags on the ground. (Doc. 103 at 166-71). Rose also noted a satchel bag, a paper bag with the word "Dempsey" written across it, and a digital scale. (Doc. 103 at 174). Within the satchel was a firearm, several bags containing white crystalline substance suspect for methamphetamine, and a small bag of apparent marijuana. (Doc. 103 at 178-92). The bags were never composited for a match to Appellant's fingerprints. (Doc. 103 at 202).

Officer Patrick DeJesus, of TPD, testified that he was dispatched to the parked Charger on February 9, 2022. (Doc. 103 at 210-12). DeJesus noticed a plastic bag containing a green, leafy substance in the rear passenger side, in addition to a cellphone. (Doc. 103 at 213-14, 218). Prescription medicine bottles in the name "Elvis Martin" were in the front of the vehicle. (Doc. 103 at 216-17).

Officer Corey Jackson, of TPD, testified that he assisted in the search of 3723 54th Street North on February 9, 2022. (Doc. 103 at 221). Clear plastic bags containing apparent marijuana were located within a dresser in the home. (Doc. 103 at 223).

Officer Stephen Tidwell, of PCSO, of TPD, testified that he performed a data extraction of the video recording and storage equipment seized from the home. (Doc. 103 at 226-31). The extracted video footage was stored for officers to review. (Doc. 103 at 231).

Crime Scene Technician Ashley Moore, of TPD, testified that she processed several scenes in connection with the instant case, including the ditch on the roadway, the Charger, and the residence at 3723 54th Street North on February 9, 2022. (Doc. 103 at 236-37). Moore processed several bags of marijuana for fingerprints and located approximately five fingerprints from the vacuum-sealed bags, and a print on the cardboard box. (Doc. 103 at 242-43). Moore also found prints within the Charger. (Doc. 103 at 244).

Officer Jorge Tamargo, of TPD, testified that he placed the extracted video data on a thumb drive and reviewed the videos, which were surveillance video clips taken from the residence. (Doc. 104 at 19-27). Several videos were published to the jury. (Doc. 104 at 29-30). Tamargo acknowledged that there was no follow up investigation related to the iPhone recovered in the Charger, including text messages, phone logs, or location history. (Doc. 104 at 34-37).

Special Agent Matthew Murray, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that he was present when an agent rolled the Appellant's fingerprints. (Doc. 104 at 45-48). Murray also testified that he decided not to pursue an investigation of any DNA evidence in this case. (Doc. 104 at 49-50).

Crime Laboratory Analyst Khara Tallman, of the Florida Department of Law Enforcement (FDLE), analyzed several items of evidence in this case. (Doc. 104 at 51-54). Tallman testified that the white crystalline substance was consistent with methamphetamine and weighed approximately 191.01 grams. (Doc. 104 at 55). Forensic Chemist, Erin Schaeffer, of the Drug Enforcement Administration, testified that she also analyzed the methamphetamine, and performed a purity test. (Doc. 104 at 59-60). Schaeffer determined that the substance was 100 percent pure. (Doc. 104 at 61). Forensic Chemist, Elizabeth Adkins, analyzed additional smaller bags of crystalline substance, and testified that the aggregate weight of the substance was

approximately 8.3 grams of methamphetamine, which was 100 percent pure. (Doc. 104 at 62-65).

Fingerprint Specialist, Thomas Gonzalez, of the TPD, testified that he conducted a comparison analysis of the known print card and latent prints lifted from the scene. Gonzalez determined that Appellant's fingerprint card was a match to a print purportedly lifted from the passenger side quarter panel of the Charger. (Doc. 104 at 66-69, 70-71). The prints listed from the vacuum bags were not of comparison value. (Doc. 104 at 69-70).

Special Agent Gary Corbett, of the Drug Enforcement Administration, testified that smaller packages of narcotics are generally used for street distribution to individual users, while larger packages are generally sold to narcotic distributers. (Doc. 104 at 72-79). Corbett opined that the presence of a firearm and a scale with narcotics is consistent with distribution. (Doc. 104 at 79-80). Corbett had no personal involvement in the instant case and did not consult with any of the investigators involved. (Doc. 104 at 84-85).

The government rested their case-in-chief. (Doc. 104 at 86). The defense made a Rule 29 motion for judgment of acquittal on grounds that there was no evidence that Appellant conspired with any other person to distribute narcotics to support Count One. As to Count Two, Three, and Four, there were no fingerprints or other evidence connecting the Appellant with the evidence found on the side of the road,

including the firearm. (Doc. 104 at 87). The motion was denied. (Doc. 104 at 87-88).

The defense called Warren Viverette to testify. Viverette testified that he was present in the gallery for the first day of Appellant's trial. While Detective Adkinson was on the stand, be pointed to Viverette and identified him as Elvis Martin. (Doc. 104 at 89). Warren Viverette was, of course, not Elvis Martin, and noted that Martin is taller and thinner than Viverette. Atkinson misidentified Warren Viverette as Elvis Martin. (Doc. 104 at 90). The defense then rested their case. (Doc. 104 at 90).

Following closing arguments and deliberations, the jury returned a verdict of guilty on March 9, 2023, finding the Appellant guilty as to Counts One, Two, Three, and Four. (Doc. 104 at 139-40). When the verdict was read, the following occurred on the record:

> **THE COURT:** You've served your country. Thank you for everybody here. Thank you very much. Have a good day.
>
> (Judge Jung exited the courtroom).
>
> **THE DEFENDANT:** You all got me – took my mother fucking every single one of my kids. I got four of them. Man, I ain't never going to see them again. I want ya'll to know I ain't never going to see them again. Y'all not the only judges. I just want you to know only God the judge. He's gonna come right, I'm telling you, man. Y'all just took all my kids, every single one of them. You people don't even know me, man. I'm telling you, man.
>
> (Screaming to the gallery.)

12

**THE DEFENDANT:** Man, let my arm go, man, because I ain't got nothing to live for. I got nothing to live for.

(Defendant taken out of the courtroom).

(Doc. 104 at 141).

The district court adjudicated the Appellant guilty as to all counts and the trial concluded. (Doc. 104 at 142).

### iv. Statement of Sentencing Facts

The Appellant's sentencing hearing was conducted on May 31, 2023. (Doc. 93). The Appellant's total offense level was 34 (inclusive of a two-level enhancement for "obstruction of justice") and his criminal history was VI, resulting in a guideline range of 262 to 327 months for Counts One, Two, and Four. (Doc. 81 at 23).

The defense objected to the Pre-Sentence Report with respect to the two-level enhancement for obstruction of justice. While Appellant did make statements in front of the jury which did not meet the expected courtroom decorum, the conduct did not interfere with the verdict or affect the administration of justice. (Doc. 91 at 3-4). With respect to the alleged statements relative to the prosecution, defense counsel asserted that the investigation and trial was concluded at the time of these statements and the sentencing hearing was not impacted in any material manner. (Doc. 91 at 4-5). The objection was overruled. (Doc. 91 at 8).

13

The government then requested a sentence at the high-end of the guidelines (Doc. 91 at 8-12).  The district court imposed a sentence of three hundred sixty (360) months: a term of three hundred (300) months in the Bureau of Prisons (BOP) as to Counts One and Two to run concurrent; sixty (60) months as to Count Three, to run consecutive to all counts; and one hundred twenty one (121) months as to Count Four, to run concurrent to Counts One and Two. (Doc. 91 at 14). The Appellee was also sentenced to five (5) years of supervised relief for Counts One, Two, and Three, and three (3) years of supervised release for Count Four, with all terms to run concurrent. (Doc. 91 at 14). The Appellant remains incarcerated today.

### v. Standard of Review

I.    This Court reviews the denial of a motion to suppress under a mixed standard of review, reviewing the district court's factual findings for clear error, and its application of law to those facts de novo. *United States v. Bautista-Silva*, 567 F.3d 1266, 1271 (11th Cir. 2009). All facts are construed in the light most favorable to the prevailing party below. *See Id*.

II.   This Court reviews *de novo* a district court's denial of a motion for judgment of acquittal on grounds of insufficient evidence. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). "In determining whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the government and decide whether a

reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Facey*, 386 Fed. Appx. 910. 913 (11th Cir. 2010)(citing *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991)). Furthermore, a "jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

III.  The court reviews for clear error the district court's findings of fact, as well as the district court's determination that a defendant is subject to a sentencing enhancement. *United States v. Massey*, 443 F.3d 814 (11th Cir. 2006).

## <u>SUMMARY OF THE ARGUMENT</u>

The district court erred in denying the Appellant's motion to suppress the unlawful seizure of both the video recording and video storage equipment found in the search of the residence. Appellant had a valid constitutional challenge to the scope of the search and the seizure on the merits. Suppression was warranted.

The district court erred in denying the Appellant's motion for judgment of acquittal where the government failed to prove, beyond a reasonable doubt, that the Appellant was guilty of conspiring to sell and distribute marijuana and/or methamphetamine, and knowingly and intentionally possessing narcotics and a firearm. The evidence introduced by the government was insufficient to sustain a

conviction. Accordingly, the district court should have granted judgment of acquittal under Federal Rule of Criminal Procedure 29(a).

Finally, the district court erroneously overruled the Appellant's objection to the improper application of a sentencing enhancement for obstruction of justice. The finding of obstruction was neither factually accurate nor possible at the relevant stage of the case, when the investigation and trial was concluded. Therefore, Appellant is entitled to a resentencing free from such error.

## ARGUMENT AND CITATION OF AUTHORITY

## II.    THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS

The district court erred in denying the Appellant's Motion to Suppress the digital video recorders and memory cards seized following the execution of the search warrant. The issue before the Court is purely legal and therefore, this Court is entitled to review the District Court's findings de novo. This Court should find that the Appellant's constitutional rights were violated.

Below, Appellant first argued that the search warrant was plainly invalid as it related to the video recorders and memory cards, citing *Groh v. Ramirez*. 540 U.S. 551 (2004). Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment by its terms requires particularity in the warrant, not in

the supporting documents. See *Massachusetts v. Sheppard,* 468 U.S. 981, 988, n. 5, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In the instant case, the application did not adequately describe video recording and storage as items "to be seized." The affidavit for the search warrant noted that officers had probable cause to believe that "MARIJUANA/METHAMPHETAMINE and items described in Exhibit A." "Exhibit A" was an attachment listing items that the affiant, Detective Taylor Hart, believed the drug traffickers frequently used in the course of their trafficking operations, including "electronic equipment." (Doc. 50-1 at 7). However, there was no "Exhibit A" attached to the search warrant presented to the owners of the home during the execution of the search warrant. "Exhibit A" was not presented to the defense until shortly before the suppression hearing in this matter. Further, electronic recording and storage devices did not meet the definition of drug paraphernalia mentioned in the warrant.

During the hearing, Detective Hart acknowledged that he presented the search warrant to the homeowner while executing the warrant but did not present the affidavit for the search warrant and did not present the accompanying "Exhibit A." (Doc. 102 at 17-18). Within the search warrant alone, there were not appropriate words of incorporation to authorize the seizure of any items outside of methamphetamine, marijuana, and drug paraphernalia. Without words of incorporation, or physically presenting the affidavit and Exhibit A, Hart was

unilaterally deciding what items to seize in the search without proper authorization, and the seizure was unconstitutional.

Further, Appellant argued that the incriminating nature of the recorders and memory cards were not immediately apparent such that a warrantless seizure was permitted. *See Horton v. California*, 496 U.S. 128, 136 (1990).  Detective Hart and Officer Rose both testified that they did not review the surveillance footage at the time of the seizure, and ultimately had to seek an additional warrant to view the footage. (Doc. 91 at 27). While the officers were lawfully present inside of the home, law enforcement was not justified in seizing the recording equipment where there was no reason to believe that equipment was criminal (*e.g.*, this was not a matter involving stolen property), and where the Appellant was not charged with any crimes before the equipment was seized and reviewed. Therefore, the district court's findings as to whether the equipment was in plain view were irrelevant to the constitutional issues at hand.

Finally, the good faith exception to the exclusionary rule would not apply in the instant case because the search warrant was so facially deficient as to the description of the items to the seized that law enforcement could not reasonably presume that the search warrant authorized the seizure of the video equipment. See *United States v. Leon*, 468 U.S. 897 (11th Circuit 1984).

The seizure of the video recording and storage equipment was invalid. Therefore, the district court erred in denying the Appellant's Motion to Suppress the video recorders and memory cards seized, and the fruits of the unconstitutional seizure were played for the jury at trial and harmed the Appellant's case. The issue before the Court is purely legal and therefore, this Court is entitled to review the district court's findings de novo. This Court should find that the Appellant's constitutional rights were violated.

### III. THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION

The district court erred in denying the Appellant's motion for judgment of acquittal because the evidence presented was insufficient to sustain a conviction. The government furnished insufficient evidence connecting the Appellant with the crimes charged. Accordingly, the district court should have granted a judgment of acquittal under Federal Rule of Criminal Procedure 29(a).

"[T]he elements of the offense of conspiracy under 21 U.S.C. § 846 are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). "In order to prove a drug distribution conspiracy, the government must establish beyond a reasonable doubt: (1) the existence of an agreement among two or more persons; (2) that the defendant knew

of the general purpose of the agreement; and (3) that the defendant knowingly and voluntarily participated in the agreement." *United States v. Ellwood*, 188 Fed. Appx. 935, 938 (11th Cir. 2006) (citing *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000)). To prove participation in a conspiracy, the government must have proven beyond a reasonable doubt that a conspiracy existed, and that the defendant knowingly and voluntarily joined the conspiracy. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). "It is axiomatic that you cannot have a conspiracy without an agreement between two or more culpable conspirators." *U.S. v. Arbane*, 446 F.3d 1223 (11th Cir. 2006).

To establish the offense of conspiracy, Count One of the Indictment, the government was required to prove that the Appellant came to an agreement with at least one other individual to commit an illegal act, to wit: to conspire with the intent to distribute 50 grams or more of methamphetamine and less than 50 grams of marijuana. (Doc. 35 at 1). However, mere presence and mere association is not enough for the Appellant to be found guilty of conspiracy. *United States v. Brantley*, 68 F.3d 1283 (11th Cir. 1995).

Further, to establish that Appellant was charged in Counts Two, Three, and Four of the Indictment, the government had the burden to prove the Appellant's knowing possession, specifically knowingly and intentional possessing to distribute a controlled substance (methamphetamine or marijuana)(Count Two); knowingly

possessing a firearm in furtherance of a drug trafficking crime (Count Three); and possessing a firearm and ammunition while knowing that the Appellant was previously been convicted of any crime punishable by imprisonment for a term exceeding one year (Count Four). (Doc. 35 at 1-3).

The government failed to establish that the Appellant was guilty of the alleged conspiracy. The government did not present sufficient evidence that the Appellant agreed with his co-conspirators to possess or distribute methamphetamine or marijuana. The government's case boiled down to an inference that the Appellant was in the vehicle which, at one time, contained contraband in the form of methamphetamine and marijuana. Outside of the suggestion that Appellant had traveled in the same vehicle as the contraband, a vehicle that Appellant neither owned nor drove, the government had no nexus to connect Appellant with narcotics or the accompanying paraphernalia. There was no evidence regarding further plans to package, distribute, or collect money for the contents.

While there were both air and ground units pursuing the charger and recording the pursuit, there was no evidence to support a conspiracy between Appellant any other person. The government failed to identify or present any alleged co-conspirators. While the government located a cellphone in their search, they failed to present any communications which would evidence a conspiracy. The government attempted to bolster their case by holding out Special Agent Gary

Corbett as a supposed expert in the field of drug trafficking. While Corbett testified generally that different size packaging and the presence of a firearm is indicative of a trafficking organization, Corbett could not connect the Appellant with the apparent organization.  Even in the investigation phase, working backwards, law enforcement could not directly link the Appellant to the methamphetamine or the marijuana. There was no physical evidence linking Appellant with the evidence found on the side of the road, or in the residence, including no fingerprints or DNA evidence.

Additionally, the evidence was insufficient to sustain a conviction as to Counts Two, Three, and Four. The government had to prove not only that Appellant was present in the vehicle with narcotics, but that he was in knowing  actual or constructive possession with the intent to distribute narcotics.   Again, the narcotics were connected in with the Charger. While evidence may have suggested that Appellant was  Appellant was not alone in the vehicle, nor did he own or operate the vehicle. Outside of mere proximity to contraband, and a single bag with the word "Dempsey" scrawled across it, there was nothing to show that Appellant was in knowing possession of the narcotics or the firearm, which were located together on the side of the road, or that the Appellant had the power or intention to exercise dominion or control over the contraband. *See United States v. Gunn*, 369 F.3d 1229 (11th Cir. 2004). Although there was a lengthy pursuit of the charger, law enforcement never witnessed the Appellant with contraband, nor did the government

present any other witness to establish possession. Despite a full forensic investigation, there were no fingerprints tying the Appellant with any of the narcotics or the firearm, and law enforcement chose not to pursue any DNA testing on the firearm or the narcotics. Finally, without proving the Appellant's knowing possession of the firearm, the government could not prove the Appellant's possession of a firearm as a convicted felon for Count Four. Therefore, the district court erred in failing to grant Appellant judgement of acquittal. This error was not harmful, as Appellant was ultimately subject to an adverse jury verdict and is presently serving a thirty-year sentence in the Bureau of Prisons.

Based on the above, the government failed to prove each of the four crimes charged. Even viewing the evidence in the light most favorable to the nonmovant, the government's case was at best circumstantial and, at worst, entirely devoid of any credible evidence whatsoever of the crimes charged. As a result, the Appellant's conviction must be vacated and the matter remanded. In light of the above-mentioned arguments, this Court should find that the district court erred by denying the Appellant's motion for judgment of acquittal because the government failed to present sufficient evidence to sustain a conviction against the Appellant. The Appellant is entitled to have his judgment and sentence vacated accordingly.

## IV.   THE DISTRICT COURT ERRONEOUSLY DENIED THE APPELLANT'S OBJECTION TO THE SENTENCING ENHANCEMENT FOR OBSTRUCTION OF JUSTICE

The district court erred by denying the Appellant's objections to the applied enhancements at the time of sentencing. Specifically, the district court overruled the Appellant's objection to a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The objection referred to a two-level enhancement included in the Presentence Investigation Report, which read "at the defendant's jury trial, the defendant threatened to kill the prosecutor and the jurors after he was found guilty of the offense. The United States Marshals and case agents restrained the defendant and escorted him out of the courtroom. The defendant's threats required law enforcement to take preventative measures." (Doc. 81 at 7). Further, in paragraph 25, the Presentence Investigation Report noted:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impeded, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense; therefore, two levels are added. USSG §3C1.1. At the defendant's jury trial, the defendant threatened to kill the prosecutor and the jurors after he was found guilty of the offense. The United States Marshals and the case agents restrained the defendant and escorted him out of the courtroom. The defendant's threats required law enforcement to take preventative measures. As such a two-level increase is applied.

(Doc. 81 at 8).

24

The Presentence Investigation Report appears to reference an indecent which occurred at the conclusion of the Appellant's trial, after the verdict was read:

> **THE COURT:** You've served your country. Thank you for everybody here. Thank you very much. Have a good day.
>
> (Judge Jung exited the courtroom).
>
> **THE DEFENDANT:** You all got me – took my mother fucking every single one of my kids. I got four of them. Man, I ain't never going to see them again. I want ya'll to know I ain't never going to see them again. Y'all not the only judges. I just want you to know only God the judge. He's gonna come right, I'm telling you, man. Y'all just took all my kids, every single one of them. You people don't even know me, man. I'm telling you, man.
>
> (Screaming to the gallery.)
>
> **THE DEFENDANT:** Man, let my arm go, man, because I ain't got nothing to live for. I got nothing to live for.
>
> (Defendant taken out of the courtroom).

(Doc. 104 at 141).

During sentencing, counsel for the defense objected to the enhancement during Appellant's sentencing on grounds that justice was not obstructed based on this event, nor was it a clear attempt to obstruct justice by the Appellant. While Appellant's actions were not appropriate and in line with expected courtroom decorum, they cannot be construed as an attempt to obstruct justice. The verdict was already read at the time of the statements. The Appellant was clearly grieving the loss of his freedom and made statements to that effect. However, there was nothing

in this event that could be construed as an attempt to obstruct justice, nor did the Appellant have any means to obstruct justice when the investigation and entire trial had concluded. Counsel for the defense correctly noted that Appellant's sentence was not affected in any material manner. A sentencing enhancement under U.S.S.G. §3C1.1 is generally applied to cases where the defendant attempts to affirmatively conceal information, provide perjured testimony, or intimidate a witness to prevent them from sharing incriminating evidence. *See, e.g., United States v. Pate*, 853 Fed.Appx. 430 (11th Cir. 2021). This does not comport with Appellant's statements, which could not actually obstruct the administration of justice.

Further, the recitation of the events was not accurately reported in the Presentence Investigation Report. Counsel for the defense noted that United States Probation did not have a transcript of the trial when the Presentence Investigation Report was prepared, and for that reason the event was partially misapprehended. Nothing in Appellant's statements could be construed as a threat to kill the jurors or the prosecutors, as described by United States Probation. The Appellant simply stated that he had lost his children and that he had nothing left to live for – this was not a threat to harm any other person.  While district court noted at sentencing that the Appellant may have moved toward the jury while making these statements, the court's findings were still devoid of any suggestion that Appellant threatened to harm the jury or the prosecutor in a manner consistent with obstruction. This error

by the district court was not harmless, as a two-level reduction in offense level would have placed the Appellant in a significantly lower guidelines range for his sentencing.

Therefore, in light of the evidence presented by the government the district court clearly erred by applying both the four-level and two-level enhancements at the Appellant's sentencing. The Appellant is entitled to be resentenced within the appropriate guideline sentencing range.

## <u>CONCLUSION</u>

Based on the arguments, facts, and case law presented above, the Appellant's judgment and sentence should be vacated or in the alternative, the Appellant is entitled to a new trial. Alternatively, the Appellant is entitled to be resentenced.

Respectfully submitted,

By:

<u>/s/ Mark J. O'Brien</u>
Mark J. O'Brien, Esquire
Florida Bar No.: 160210

O'Brien Hatfield P.A.
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).

This brief contains 6,379 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 160210

O'Brien Hatfield P.A.
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing Initial Brief was filed on the CM/ECF system which will then provide a copy to counsel of record on this the 9th day of January 2024.

/s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 160210

O'Brien Hatfield P.A.
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989
